Commonwealth to use of Loretta J. McDonald, Appellant, *v.* Robert A. McDonald and Daniel Logan, who were co-obligors with George J. Pittman and James Cooper, deceased.

*Principal and surety—Suit against surety.*

While the liability of the sureties of a trustee is contingent on the principal being fixed personally for the debt, and his inability to pay, yet where the principal absconds, conceals himself, or resides beyond the jurisdiction of the court, or where by a decree of the orphans' court the devastavit of the principal is conclusively established, and his utter insolvency appears, an action will lie on the bond against the sureties, without proceeding first against the principal.

*Costs—Waiver of right to costs.*

Where a legatee on an appeal to the Supreme Court in a contest against a trustee and his sureties, does not ask for a decree as to costs in the Supreme Court, nor subsequently in the orphans' court when the record has been remitted for further proceedings, but institutes suit on the trustee's bond in the common pleas, it will be presumed that the legatee has waived his right to costs.

*Principal and surety—Liability of surety as fixed by decree of orphans court.*

The orphans' court made an order to sell the real estate of the decedent and appointed a trustee to make the sale. The auditor appointed to distribute the fund found as a fact that the real estate sold was not a part of the estate of the decedent. On exceptions to the auditor's report the court reversed the auditor, and found that the real estate belonged to the decedent. No appeal was taken from the decree, and after the lapse of four years suit was brought on the bond of the trustee. *Held,* that the decree of the orphans' court was final and conclusive against the trustee's sureties.

Argued June 3, 1895. Appeal, No. 23, May T., 1895, by plaintiff, from order of C. P. Fulton Co., entering nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Assumpsit on a bond of a trustee.  Before McCLEAN, P. J.
The facts appear by the opinion of the Supreme Court.
The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned*, among others, was (3) refusal to take off nonsuit.

*Francis Jordan, George A. Smith* and *W. Scott Alexander* with him, for appellant, cited: McDonald's App., 156 Pa. 445; Haneman v. Pile, 161 Pa. 599; Keller v. R. R., 161 Pa. 504; Scott on Intestate Law, 2d ed. 596.

*J. Nelson Sipes, W. U. Brewer* and *W. Rush Gillan*, for appellee, cited: Shollenberger's App., 21 Pa. 339; Whiteside v. Whiteside, 20 Pa. 473; Black v. Black, 34 Pa. 354; Van Dyke's App., 60 Pa. 481; Com. v. Stub, 11 Pa. 150; Myers v. Fretz, 4 Pa. 344; Miller's App., 107 Pa. 221.

OPINION BY MR. JUSTICE DEAN, July 18, 1895:

When this case was here before, it was on appeal of Loretta J. McDonald from decree of the orphans' court. In that case, the court below had set aside the report of the auditor awarding to Mrs. McDonald her share of her father's estate. On the evidence, the auditor found she had not been paid this share; on exceptions filed by the sureties of the trustee, the court was of opinion she had been paid, and made a decree accordingly. On appeal by Mrs. McDonald, this court, in opinion filed, concurred with the auditor, and reversed the decree of the court below. See McDonald's App., 156 Pa. 445. The report of the auditor as to the principal sum $2,987.78, awarded to appellant, was confirmed absolutely, but no interest was allowed her; then followed this direction: "The record, with the decree thus reformed, is directed to be remitted to the orphans' court to be proceeded with according to law." No decree as to costs was made in this court, only because it did not clearly appear that all the sureties, or who of them, were appellees. We assumed the orphans' court, on application, would make an equitable decree as to costs, as that court had equitable powers, with full knowledge of who were the active litigants in the proceedings which ended in the adverse decree.

When the record was remitted, Mrs. McDonald presented her petition to the court below, praying for execution from the orphans' court against the sureties. On this, there was a rule to show cause, and answer by the sureties, denying that the

decree of this court was against them, and also denying the jurisdiction of the orphans' court. The court thereupon discharged the rule. Then this suit was brought on the bond in the common pleas. The bond and record of all the proceedings in the orphans' court, with the final judgment of this court, were given in evidence by plaintiff, who then rested; defendants offered no evidence, but moved for compulsory nonsuit, which the court below ordered. Afterwards, the court refused to take off the nonsuit, because: 1. The trustee should have been proceeded against before calling upon the sureties for payment. 2. The decree in this court was not final as to the liability of the sureties, and to fix such liability, there should have been some other or further decree in the orphans' court against the defaulting trustee.

From that decree, the appeal now before us is taken.

Did the evidence offered in the court below show a present adjudicated liability of the obligors in the bond of the trustee? If it did, the nonsuit was erroneously entered.

To discern the exact situation of the parties at the trial, it is necessary to give a brief history of the case as disclosed by the records offered in evidence.

By his will, proven July 25, 1871, John Kittel, the father of Mrs. McDonald, devised to his daughter Catharine and son George, valuable land, they to pay out, among other legacies, one of $3,000 to his daughter, Loretta J. McDonald. The devisees of the land found they were unable to pay for it as directed by the will; thereupon, joined by all the other legatees and parties interested, setting out the land as part of the estate of John Kittel, testator, they petitioned the orphans' court to appoint a trustee to make sale of the land and distribute the proceeds to and among those entitled to the same under the will. The prayer was granted, and Robert A. McDonald, husband of appellant, was appointed trustee to make sale, on giving bond in sum of $18,000. The bond was given with Daniel Logan, George J. Pittman and James Cooper as sureties, which bond and sureties were approved by the court. The trustee made sale of the land to one B. M. Lodge for the sum of $11,000, which sale was confirmed by the court. He filed his account, showing payment to all the legatees, except his wife, of their respective shares; two of the sureties filed excep-

tions to this account, alleging: 1. That Loretta J. McDonald had been paid her share by her husband. 2. That the orphans' court had no jurisdiction to appoint a trustee to make sale of the land as part of the estate of John Kittel. There were other exceptions, but these were the only ones possessing any merit, and throughout the controversy were so treated both before the auditor and the orphans' court.

The auditor found from the evidence that Mrs. McDonald had not been paid her legacy, and awarded her the principal, $2,987.78, with interest, $2,014.11; total, $5,001.89. He further found, that the land sold was not the land of the testator, but of his devisees, Catharine and George.

To this report, the sureties filed exception to the finding of fact, that Mrs. McDonald had not been paid her legacy, and to the award of interest thereon. Mrs. McDonald filed exception to his legal conclusion that the land sold was not that of the testator.

After hearing, the orphans' court being of opinion Mrs. Mc-Donald had been paid, sustained the exceptions of the sureties in that particular; further, it being of opinion that the conclusion of the auditor, that the land was not part of the estate of John Kittel, was error, Mrs. McDonald's exception in that particular was sustained. The auditor's report was accordingly set aside. From that decree, Mrs. McDonald appealed to this court, assigning for error the decision of the court that she had been paid her legacy. All the errors alleged and argued for and against, by the appellant and appellees, bore on the refusal of the court to direct payment of the $2,987.78, principal, and the $2,014.11, interest.

The decision of the court in favor of its jurisdiction to order the sale was not questioned; in their argument to sustain the conclusion of the court that Mrs. McDonald had been paid, appellees' counsel contented themselves with this single remark: " What right or authority the court had to order this sale, it is probably now not necessary to inquire." The contest on the appeal was solely on the question of fact as to whether Mrs. McDonald had been paid; the judgment of this court was she had not been paid the principal, $2,987.78. To this amount she was entitled, with interest to be computed from the day final judgment should have been entered in her favor in the

court below, May 2, 1890.   She would also have been entitled
to a decree for costs in the court below, as against the sureties
on the bond, who contested her claim, on proper application
for such decree.   This record does not show that such applica-
tion was ever made.   We must assume, therefore, that she
waived her right to costs, as she instituted suit on the bond in
the common pleas, without a final decree as to costs, either in
this court or in the court below.

The evidence then offered by plaintiff to sustain the issue
on her part in the court below showed without contradiction :·
1. A final decree in her favor for $2,987.78, on which she was
entitled to interest from May 2, 1890.   2. That the trustee
for eleven years had neglected and refused to pay her this
money.   3. That, from findings of fact by the auditor, the
averments of the sureties in the exceptions, the opinion of the
orphans' court and of this court, he was insolvent and had
been so for years.   4. That the express obligation of the sure-
ties was to answer for this very default.

The bond is an official bond, and while, as decided in Com.
v. Wenrick, 8 W. 159, Myers v. Fretz, 4 Pa. 344, and other
cases, the liability of the sureties of an executor, administrator,
or trustee, is contingent on the principal being fixed person
ally for the debt, and his inability to pay, yet it has always
been held that where he absconds, conceals himself or resides
beyond the jurisdiction of the court, an action will lie on the
bond against the surety, without proceeding first against the
principal.   And for the same reason, here, where, by the judg-
ment of the orphans' court, the devastavit of the principal is
conclusively established, and his utter insolvency appears, not
only from the testimony before the auditor, but from the formal
assertion of it by the sureties themselves, in exceptions filed
of record, the use plaintiff is relieved from further pursuit of
the principal.   The law does not require an absurd and useless
thing, such as an execution against the principal, and a return
of " no goods " or his commitment as if for contempt, and a
discharge under the insolvent laws.

Why, then, should plaintiff have been nonsuited?   Appellees
answer, there is no final decree in the court below, determin-
ing that the fund in the hands of the trustee formed part of
the estate of John Kittel, deceased.   But note the record :

" The auditor further finds, however, that Robert A. Mc-Donald, under the power of sale committed to him by the orphans' court, sold, not the real estate of John Kittel, but the real estate of Catharine Mosser and George Kittel for the payment of legacies charged thereon."

To this finding Mrs. McDonald filed her second exception, as follows : " The auditor erred in not finding the real estate sold to be that of John Kittel, the testator." After argument, this is the judgment of the orphans' court on that exception : " It is manifest, from the previous references in this opinion to the proceedings in court, the language of the bond and of the releases, that there is error in the auditor's finding, that what was sold, was ' not the real estate of John Kittel, but real estate of Catharine Mosser and George Kittel.' The account which was the subject of controversy is the account of a trustee appointed to sell the real estate of John Kittel, deceased. The fund in controversy is the proceeds of the sale of the real estate of John Kittel, deceased. The second exception on behalf of Mrs. McDonald must be sustained."

Here, certainly, was a final adjudication of this question by the orphans' court in Mrs. McDonald's favor. It was entered of record 2d of May, 1890, and has never been appealed from by the sureties. It never was attacked collaterally until now ; it never could have been so attacked successfully ; after this lapse of time, it has become conclusive even against direct attack by appeal from it. Therefore, as the undisputed evidence showed when plaintiff rested her case she was entitled to a verdict for $2,987.78, with interest from May 2, 1890, the judgment of nonsuit was error; it is now reversed, and procedendo awarded.